UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                               Plaintiff

v.                                                    Criminal Action No. 3:19-cr-00014-RGJ

AARON SHELTON                                                          Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant, Aaron Shelton's ("Shelton"), Motion to Suppress Evidence ("Motion to Suppress" or "Motion"). [DE 43]. The Court held an evidentiary hearing. [DE 46]. Post-hearing briefs were filed. [DE 57, 58]. This matter is now ripe. For the reasons below, the Court **DENIES** the Motion to Suppress. [DE 43].

### BACKGROUND

This matter stems from a *Terry* stop and search of Shelton's vehicle. Shelton challenges the constitutionality of the stop and search of his vehicle as well as the voluntariness of his waiver of *Miranda* rights. Late in the evening on February 1, 2019 or early the following morning, police began investigating the death of an apparent overdose victim. [DE 49, Transcript of Suppression Hearing, dated Aug. 19, 2019 ("Tr.") at 239:10–15; 287:23–88:7]. During the investigation, police uncovered a phone number they believed belonged to the person who sold heroin to the victim. [*Id.* at 239:10–15; 242:7–9]. Using a cooperating witness, police set up a controlled buy with the person operating the phone, who they believed to be Shelton, to take place the evening of February 2, 2019. [*Id.* at 243:8–44:14]. Before the controlled buy, officers determined that Shelton was the owner of a silver 2009 Pontiac G8. [*Id.* at 242:7–15].

1

Law enforcement set up surveillance at the meet location and observed a silver Pontiac G8 circling the area and pass by the gas station where the meet was to occur at an abnormally slow speed. [*Id.* at 244:1–7]. The cooperating witness then received instructions from the phone number believed to be linked to Shelton stating that Shelton was sending another individual to the meet location wearing a hoodie. [*Id.* at 244:8–23]. Once the cooperating witness arrived at the gas station, officers observed a man in a hoodie, later identified as Shelton's co-defendant Tajuan McDowell ("McDowell"), approach the gas station. [*Id.* at 244:18–245:2]. Officers came up to the gas station, and McDowell briefly tried to flee. Officers tackled McDowell and placed him under arrest. [*Id.* at 245:3–9]. Officers observed McDowell make a throwing motion while trying to flee and officers found three bindles of suspected heroin about eight to ten feet from where McDowell was tackled. [*Id.* at 245:10–14].

After his arrest, McDowell stated that an individual named "Aaron" sent him to the gas station to complete the transaction and that Aaron "was a black male with a gold chain and suggested that he could be found in the apartments in a silver Pontiac G8." [*Id.* at 245:15–25]. An officer at the scene relayed that information over the radio. [*Id.* at 246:4–10]. Another officer, Officer Gadegaard, located a silver Pontiac in a nearby apartment complex. [*Id.* at 262:20–63:5]. As Officer Gadegaard approached the vehicle in his car, the silver Pontiac G8 pulled out from its parking spot onto the street. [*Id.* at 263:21–24]. Officer Gadegaard testified that it appeared to him that the vehicle was "trying to evade [him]" because the car turned quickly and increased speed when he pulled behind the Pontiac G8. [*Id.* at 264:1–9]. Officer Gadegaard then initiated a stop by turning on his car's lights and sirens. [*Id.*]. Officer Gadegaard's car was then struck by Shelton's car. [*Id.*]. Officers removed Shelton from the vehicle and placed in handcuffs. Officers found a small quantity of marijuana and a lighter on Shelton's person. [*Id.* at 276:19–21]. Officers

observed a "quantity of currency and several cell phones in plain view on the floorboard of the car." [*Id.* at 275:14–16]. Within minutes of the stop, a canine was brought to the scene and alerted on the exterior of the vehicle. [*Id.* at 277:15–20; 284:7–15]. Officers then searched the car and recovered the cellphones and large amount of U.S. currency. [*Id.* at 277:15–20].

At the scene, officers advised Shelton of his *Miranda* rights. [*Id.* at 277:6–12]. Shelton was taken to the DEA for an interview. [*Id.* at 280:3–4]. He was provided a written copy of his *Miranda* rights, and a DEA agent explained those rights to him. [*Id.* at 280:8–11]. Shelton made several statements, and then invoked his right to counsel. [*Id.* at 280:14–82:4]. After Shelton invoked his right to counsel, questioning ceased. [*Id.*].

## DISCUSSION

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The defendant's burden extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

Shelton moves to suppress all statements and evidence obtained from the February 2, 2019 stop and search of his vehicle arguing that the officers lacked probable cause to conduct the traffic stop. [DE 57 at 338–39]. Shelton also argues that even if the officers had probable cause to stop the vehicle, they did not have probable cause to search the vehicle. [*Id.*]. Finally, Shelton argues that even if the stop was proper, the officers impermissibly questioned Shelton in violation of his *Miranda* rights. [*Id.* at 339–40].

A. Officers had reasonable suspicion to stop Shelton[1].

"The police are permitted 'to stop a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *United States v. Slater*, 209 F. App'x 489, 495 (6th Cir. 2006) (quoting *United States v. Hensley*, 469 U.S. 221, 227 (1985)). To show reasonable, articulable suspicion the officer must point to "specific and articulable facts, which taken together with rational inferences from those facts," reasonably suggest than criminal activity has occurred or is imminent. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion cannot be based on "inchoate and unparticularized suspicion or 'hunch,' but [on] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27. In evaluating whether an officer had reasonable suspicion, courts look at the "totality of the circumstances" and consider "all of the information available to law enforcement officials at the time." *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008).

Shelton argues that officers lacked reasonable suspicion because the only information officers had were three-year-old phone records linking Shelton to the phone used to set up the controlled buy. [DE 57 at 338–39]. He also argues that the suspicion about Shelton should have dissipated when officers arrested McDowell because "they had the man actually conducting the narcotics transaction in custody." [*Id.* at 339]. First, shortly before the controlled buy took place the cooperating witness received instructions that Shelton would be sending another individual to the gas station to conduct the transaction. [Tr. at 244:8–23]. Based on this instruction, officers could reasonably believe that there were at least two individuals involved in the narcotics

---

[1] The United States bases the constitutionality of the stop on the officer's belief that a traffic violation occurred. [DE 58 at 344–46]. But no officer testified that they observed a traffic violation nor was Shelton cited for a traffic violation. Thus, a traffic violation cannot be a valid basis for the stop.

4

transaction, and their continued suspicion about Shelton was warranted. Second, officers had far more information than just the phone number connecting Shelton to the controlled buy.

Here, while the cell phone records connecting Shelton to the phone number may be three-years-old, officers obtained other, more recent information connecting Shelton to the controlled buy. For example, the officers observed the same color and model of car Shelton owned circling the area of the meet location in a suspicious manner. Officers also obtained information from McDowell at the scene of the controlled buy, which supported reasonable suspicion that Shelton was engaged in criminal activity. McDowell stated that "Aaron" was the one who sent him to the gas station and "he could be found in the apartments in a silver Pontiac G8." [Tr. at 245:18–25]. The description provided by McDowell, which specified where Shelton was, and corroborated other information known by the officers, such as the model and color of Shelton's car, supported reasonable, articulable suspicion that Shelton was involved in the narcotics transaction. *See, e.g.*, *United States v. Schaafsma,* 318 F.3d 718, 722 (7th Cir. 2003) (finding that where an individual involved in a drug sale stated that another person was involved and indicated that he was in a car in a nearby parking lot there was probable cause to arrest defendant when officers observed a car in that parking lot trying to leave upon informant's arrest); *see also Neal v. Melton*, 453 Fed.Appx. 572, 579 (6th Cir. 2011) (finding that *Terry* stop was proper when the reasonable suspicion was based in part on fact that the "vehicle matched the description of the vehicle allegedly dealing drugs and was located in the same vicinity as the alleged criminal activity"). Under the totality of circumstances present here, officers had reasonable, articulable suspicion that Shelton was involved in the criminal activity. Thus, the *Terry* stop was constitutional.

B. Officers permissibly searched the vehicle.

If the stop, itself, is permissible, the Court next examines "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). In determining the reasonableness of the stop, the court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (internal quotations omitted).

Here, officers suspected Shelton of being involved in a drug transaction. "[T]he canine narcotics sniff is directly related to investigating this suspicion." *United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) (finding that a canine sniff did not unreasonably prolong *Terry* stop of suspected drug traffickers). The canine was brought within minutes of the initial stop and gave a positive alert on the exterior of the vehicle. [Tr. at 277:15–20; 284:7–9]. The several minutes it took to conduct the canine narcotics sniff did not unreasonably prolong the stop. *See Orsolini*, 300 F.3d at 730 (finding a *Terry* detention reasonable when the parties spent about thirty-five minutes waiting for the canine unit to arrive). The canine alert provided "probable cause sufficient to justify a warrantless search of a stopped vehicle." *United States v. Hill*, 195 F.3d 258, 273 (6th Cir. 1999). Thus, the search of the vehicle was constitutional.[2]

---

[2] Here, it is also likely that inevitable discovery resulting from an inventory search is an independent basis justifying the search of Shelton's vehicle. *See United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994). That said, it is not clear from the record whether Shelton's arrest was based on the additional evidence in the car. Because the Court has found that probable cause existed to search the vehicle, it need not decide whether inevitable discovery resulting from an inventory search justified the search.

C. <u>Officers gave timely *Miranda* warning</u>.

The Supreme Court requires that an individual be informed of his *Miranda* rights before a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966). A person may waive his *Miranda* rights, but waivers of *Miranda* rights must be voluntary, knowing, and intelligent. *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005). "To determine whether the confession was knowing and intelligent, we apply a totality of the circumstances test to ascertain whether [the defendant] understood his right to remain silent and to await counsel." *Id.* "Under this inquiry, we examine the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (internal citations omitted). The defendant "has the burden of establishing that, under the totality of the circumstances, he did not knowingly and intelligently waive his rights before speaking to the police." *Id.* at 260–61.

Shelton states that he "exhibited confusion regarding the process and what could and could not happen," and therefore, his waiver could not be knowing. [DE 57 at 339–40]. Even so, Shelton offered no evidence of his confusion or that he failed to understand his rights. In fact, the evidence on the record suggests that he did understand his rights because after several minutes in the interview room Shelton invoked his *Miranda* rights by requesting counsel, and the interview ceased. [Tr. at 282:2–5]. Thus, any statements made by Shelton after he received his *Miranda* warnings but before he invoked his right to counsel will not be suppressed.

## CONCLUSION

Accordingly, for the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED that** Shelton's Motion to Suppress Evidence [DE 43] is **DENIED** as set forth above. This matter is set for an in-person status conference on **January 9, 2020 at 1:30 p.m.** at

7

the Gene Snyder United States Courthouse before the Honorable Rebecca Grady Jennings, United States District Judge.


Cc:     Counsel of record