UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                    Plaintiff

v.                                           Criminal Action No. 3:19-cr-14

AARON SHELTON, ET AL.                                      Defendants

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendant, Aaron Shelton ("Shelton") moves to construe his filed "Objections" as a motion to reconsider the detention order of Magistrate Judge Regina S. Edwards ("Judge Edwards") under 28 U.S.C. §636(b)(1)(A) (the "Motion") [DE 100]. The United States responded [DE 102]. This matter is now ripe. For the reasons below, the Court considers Shelton's Objections [DE 99] as a Motion under 28 U.S.C. §636(b)(1)(A) and **DENIES** Defendant's Motion to Reconsider Detention Order [DE 100] and **DENIES** Defendant's second and third requests for a hearing [DE 100; DE 101].

### I.      BACKGROUND

Authorities arrested Shelton on a criminal complaint on February 4, 2019. Judge Edwards detained Shelton following an initial appearance. [DE 9]. He was then indicted on February 5, 2019, for conspiracy to distribute a mixture and substance containing a detectible amount of heroin causing death, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and possession with intent to distribute a mixture and substance containing a detectible amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2. [DE 1].[1] Because Shelton was charged with

---

[1] On November 20, 2019, a superseding indictment charged Shelton with possession with intent to distribute a mixture and substance containing a detectible amount of heroin and fentanyl causing death and conspiring to distribute and possessing with intent to distribute a detectable amount of fentanyl and heroin leading to death of another person. [DE 64].

1

an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act, 21 U.S.C. §§ 801-904, there is a rebuttable presumption under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

Judge Edwards held a detention hearing on February 7, 2019 and ordered Shelton detained pending trial. [DE 14; DE 26 Feb. 7, 2019 Hrg. Trans.]. At this hearing, counsel presented arguments, discussed the pending charges, and Shelton's criminal history. *Id.* The United States Probation Office made recommendations. *Id.* Judge Edwards was advised of Shelton's medical condition, including his diabetes. Judge Edwards then found by clear and convincing evidence that there was no condition or combination of conditions which would reasonably assure the safety of the community if Shelton were released from custody pending his trial. *Id.*

Shelton moved to Revoke the Detention Order issued by Judge Edwards. [DE 21]. This Court held an in-person hearing. [DE 35]. This Court noted that the charges against Shelton were very serious and carried the potential for a long incarceration if convicted. [DE 35 at 176]. Further, this Court noted Shelton's significant prior criminal history, which included participation in criminal activity while on probation or supervision. *Id.* This Court then found by clear and convincing evidence that there was no condition or combination of conditions which would reasonably assure the safety of the community if Shelton were released from custody pending trial and denied the Motion to Revoke Detention. *Id.*

Shelton again moved for release on January 20, 2020, asserting that his prolonged detention violated his due process rights. [DE 81]. This Court found that Shelton failed to present enough evidence to overcome the presumption in favor of detention and denied his motion. [DE 87].

And now, Shelton seeks another review of his detention. On March 18, 2020, Shelton moved for immediate release because of danger from Coronavirus due to his diabetes. [DE 91]. The next day, this Court referred the Motion to Judge Edwards under 28 U.S.C. §636(b)(1)(A). [DE 93]. On March 20, 2020, Shelton filed an Emergency Motion for Hearing With Magistrate Regarding Release. [DE 94]. That same day, the United States objected. [DE 95]. Shelton replied. [DE 96]. The United States responded to the motion for hearing. [DE 97]. On March 27, 2020, Judge Edwards issued an Order denying the Motion for Immediate Release [DE 91] and denying the Motion for Hearing [DE 94]. [DE 98].

On Wednesday, April 1, 2020, Shelton filed Objections to the Magistrate Judge's Order. [DE 99]. Later the same day, the Motion to Reconsider was filed with this Court requesting that the objections be deemed a motion to reconsider and that this Court hold a telephonic hearing. [DE 100]. Shelton then filed a "Third Motion for Hearing for Release Due to Diabetes" on Monday, April 6, 2020 without permitting time for a response from the United States to the original request for hearing. [DE 101]. The United States responded to the Motion to Reconsider on Tuesday, April 7, 2020. [DE 102].

I.      STANDARD OF REVIEW

18 U.S.C. § 3145(b) governs review of detention orders and provides that "[i]f a person is ordered detained by a magistrate judge . . . that person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." This Court reviews a Defendant's appeal of an order of detention *de novo*. *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985). Reconsideration of a defendant's detention order may be granted only on new information "that has a material bearing on the issue

whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Under the Bail Reform Act, a defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will *reasonably assure* the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) (emphasis added); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004) (noting that the requirement is not one of "guarantee," but "reasonable assurance"). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the community's safety, the district court considers four factors set forth in 18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the defendant's appearance and/or the defendant threatens the safety of any other person in the community must be supported by clear and convincing evidence. *Id.* § 3142(f)(2)(B). As mentioned above, there is a rebuttable presumption under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions will reasonably assure the appearance of Shelton as required and the safety of the community because Shelton was charged with an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act, 21 U.S.C. §§ 801-904.

## III. DISCUSSION

### A. Motion for Release Related to COVID-19.

Shelton's argues the COVID-19 pandemic coupled with his diabetes serve as new grounds for his release from detention pending trial. [DE 91]. Shelton asserts the pandemic constitutes "changed circumstances" in determining whether there is a set of conditions that will assure his appearance at trial and protect the community. [*Id.*, at 447]. Shelton argues that the conditions of confinement create the "ideal environment" for the spread of Coronavirus and that his diabetic

condition makes him susceptible to infection. *Id.* He also argues that the Bail Reform Act requires this Court release him to ensure his health and availability for trial. [*Id.*, at 450]. Shelton contends that the detention facility where he is housed "lacks the resources necessary to engage in screening and testing of inmates[,]" making them ill-equipped to handle a potential outbreak of Coronavirus. [*Id.*, at 449]. Shelton cites 18 U.S.C. §3142(i), stating that the Court may permit "temporary release" if "such release [is] necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

1.   "Compelling Reason" Analysis Under 18 U.S.C. §3142(i).

As its plain language reveals, this provision applies in rare situations when release is "necessary" for preparation of a defendant's case or another "compelling reason." 18 U.S.C. § 3142(i). "[T]he need to prepare a defense or other compelling reason under Section 3142(i) are not additional factors the Court may consider in evaluating *whether* to detain a defendant in the first place; those factors are in Section 3142(g) only." *United States v. Villegas,* No. 2:19-CR-568-AB, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020). Section 3142(i) presumes that a Court has already determined that the defendant must be detained pending trial, which is true as to Shelton, but permits a "subsequent order" for release to the "custody of a United States marshal or another appropriate person" for the two limited reasons of defense preparation or other "compelling reason." *Id.* Additionally, the release must be "temporary," no longer than needed to complete the "necessary" defense preparations or to resolve the other "compelling" circumstances. *Id.* A defendant bears the burden of establishing circumstances warranting temporary release under 18 U.S.C. § 3142(i). *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020); *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

Shelton does not argue that release is necessary for defense preparations, but only for the health risks posed to him by COVID-19 which he asserts is a "compelling reason" under 18 U.S.C. § 3142(i). Shelton also asserts that these risks are "heightened because of his diabetes, given the conditions at the Oldham County Detention Center, where it is impossible to practice safe distancing and proper hygiene." [DE 91 at 446]. He does not argue any of the factors under 18 U.S.C. Section 3142(g).

There is limited authority for when temporary release is justified under 18 U.S.C. § 3142(i) based on "another compelling reason," although a defendant's medical condition may present that compelling reason under certain facts. *See United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009) (noting the defendant could seek temporary release under § 3142(i) for medical reasons). Courts have typically granted relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020).

For example, in *United States v. Scarpa*, which Shelton cites, the district court permitted the defendant to be released under the 24-hour guard of the United States Marshal Service at his own expense because the defendant had sustained a gunshot wound that destroyed his left eye and surrounding area of his face and skull, he would "shortly die" from terminal AIDS, and correctional authorities could no longer manage his medical conditions. 815 F. Supp. 88 (E.D.N.Y. 1993); *see also United States v. Stephens*, ⸺ F. Supp. 3d ⸺, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (permitting release of defendant because of COVID-19 pandemic). As Judge Edwards concluded, the present case is different because Shelton "does not have a chronic illness requiring specialized treatment" that cannot be provided at his current facility. [DE 98 at 470]. This Court finds none of the case law put forth by Shelton to be on point as to the 18 U.S.C.

§3142(i) analysis necessary to show a "compelling reason" posed by his health or the COVID-19 pandemic.

2.  The *Clark* Factors.

In *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 (D. Kan. Mar. 25, 2020), the district court analyzed recent cases addressing whether defendants should be released from custody or allowed bond conditions based solely on COVID-19 concerns. The *Clark* Court conducted an in-depth study of cases about the pandemic, and the various manners in which courts have resolved these motions. The *Clark* Court determined that the inquiry into whether a defendant's individual circumstances warrant release during the COVID-19 pandemic is appropriately considered case-by-case under the "compelling reason" prong of 18 U.S.C. § 3142(i). In making that determination, the Court noted:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the undersigned will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3. While there is no specified test in this Court or in the Sixth Circuit, the *Clark* factors adequately capture the concerns that every Court must weigh under the statutory framework in considering whether the defendant's assertions about COVID-19 represent a "compelling reason" for release.

*a. The Original Grounds For Shelton's Pretrial Detention.*

In detaining Shelton originally, Judge Edwards found,

> There is a rebuttable presumption under 18 U.S.C. 3142(e)(3) because the offense is one which carries a maximum term of imprisonment of 10 years or more under the Controlled Substance Act; that the Defendant did not introduce sufficient evidence to rebut that presumption; that there was no condition or combination of conditions of release that would reasonably assure the safety of another person or the community; the defendant's prior criminal history; and the activity the defendant engaged in while on probation, parole or supervision were of concern.

[DE 14 at 68]. More specifically the Judge Edwards stated,

> [T]here is no sets of conditions or terms of release that would mitigate the danger to the community that Mr. Shelton poses if released. The charges against Mr. Shelton are quite serious and involve the alleged sale of drugs which resulted in a death . . . [a]lthough young, Mr. Shelton has a significant criminal history involving drugs including committing criminal offenses while on a diversion program . . . I am not persuaded that even living with an aunt who is clearly loving and supportive would provide the necessary protections to ensure the safety of the community given the charges against Mr. Shelton today.

[DE 26 at 146]. Judge Edwards also expressed concerns that: 1) Shelton has been non-compliant while on supervision; and 2) that Shelton was, in fact, on pretrial diversion at the time of the instant offense, and has also been charged with another state court offense while on diversion. *Id.*; [DE 33 at 173; DE 35 at 176]. Judge Edwards was advised of Shelton's diabetes and it did not outweigh the danger Shelton poses to the community if released. [DE 98 at 468].

This Court expressed the very same concerns after its hearing on the first Motion to Reconsider Shelton's detention and made the same finding on two occasions that there is no set of conditions or terms of release that would mitigate the danger to the community that Mr. Shelton poses if released. [DE 35 at 176, DE 87]. Nothing has changed in respect to any of the original reasons for Shelton's detention and Shelton has presented no new arguments or factual assertions to address any of the Court concerns as addressed during the multiple other reviews of his detention. Shelton does not proffer any different information with a "material bearing" on the

factors considered in the Bail Reform Act—the risk of non-appearance at court proceedings or of their danger to the community if released. 18 U.S.C. § 3142(f); DE 95 at 458. So the same reasons given during the multiple previous reviews for Shelton's detention orders remain just as valid and conclusive.

### b. The Specificity Of The Defendant's Stated COVID-19 Concerns

The Bail Reform Act does not authorize pretrial release under generic health conditions that while serious, apply to every detainee in federal custody. *See*, *e.g.*, *United States v. Penaloza*, 2020 U.S. Dist. LEXIS 56569, at *4 (D. Md. Mar. 31, 2020) ("[T]he mere presence of the [Covid-19] virus, even in the detention setting, does not automatically translate to the release of a person accused."); *United States of America v. Lee*, No. 19-CR-20112-03, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020) ("[T]he COVID-19 pandemic cannot be the sole basis for releasing a defendant from custody pending trial; the Court must still consider the Section 3142(g) factors."). Here, Shelton asserts that the health risks posed to him by the COVID-19 pandemic are "heightened because of his diabetes, given the conditions at the Oldham County Detention Center, where it is impossible to practice safe distancing and proper hygiene." [DE 91 at 446]. The record confirms that Shelton has diabetes, which puts him at higher risk. [DE 91 AT 447, n.3 citing *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.] Shelton does not assert that he is having any uncontrolled issues with his diabetes. He also does not provide any support for the assertion that he cannot practice safe hygiene or that "Oldham County Detention Center lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility." [DE 91 at 449].

The Court notes the updates provided to it by the United States Marshals Service, as well as information set forth in online statements by various detention facilities used in this district that these facilities are taking appropriate precautions recommended by the Centers for Disease Control to prevent the spread of COVID-19. The United States has proffered that the Oldham County Detention Center, where the defendant is being housed, has implemented the following precautions:

1. All employees and inmates are monitored for symptoms of respiratory infection;

2. All new inmates are screened by medical personnel for signs of respiratory infection and appropriate infection prevention practices are implemented;

3. Visits by non-essential personnel (programs, mentors, religious services, etc.) are suspended;

4. Inmate visitation is suspended;

5. Attorney/client meetings are being held by video conference or "through the glass" meetings;

6. "Clean teams" have been designated and provided personal protective equipment and supplies to frequently disinfect high traffic areas;

7. Hand sanitizer stations have been established and remain fully stocked; and

8. Individuals who may become symptomatic will be isolated.

[DE 95 at 459].[2] Shelton makes no argument to assert that these precautions are ineffective or any different from the precautions that a person or a person with diabetes would otherwise take to protect themselves against the spread of the virus. There are no confirmed cases in this district's

---

[2] Shelton does not object to this proffer or offer any conflicting assertions in his briefing. *United States v. Sanders,* No. 19-20037-01-DDC, 2020 WL 1528621, at *5 (D. Kan. Mar. 31, 2020).

detention facilities. Shelton's concern is speculative because he fails to demonstrate that the actions taken by the Oldham County Detention Center are not sufficient to protect someone with diabetes. *Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (advanced age and medical conditions did not warrant temporary release due to COVID where the Bureau of Prisons is taking system-wide precautions to mitigate the possibility of infection within its facilities). In addition, it is speculative that Shelton is more at risk inside the Oldham County detention Center than in the community. *Sanders*, No. 19-20037-01-DDC, 2020 WL 1528621, at *5 ("Mr. Sanders's release request does not explain how his release would mitigate his overall exposure to COVID-19. Indeed, Mr. Sanders relies on his speculative assumption that his risk of contracting COVID-19 is higher inside CoreCivic than if he is released. But that assumption is not necessarily accurate.").

> ### c. The Extent To Which The Proposed Release Plan Is Tailored To Mitigate Or Exacerbate Other COVID-19 Risks To The Defendant.

The Bail Reform Act allows for temporary release only if the court determines that such release is "necessary" for a compelling reason. 18 U.S.C. § 3142(i). In the context of COVID-19, this means that the proposed temporary release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. Shelton provides the Court no release plan other than requesting release "on bond." [DE 91 at 451]. Moreover, he does not specify that he is requesting "temporary" release, which is the only release called for under 18 U.S.C. § 3142(i).

Given the precautions taken by the Oldham County Detention Center as outlined above and without any specificity in Shelton's Motion as to how he plans on better protecting himself upon release, Shelton fails to demonstrate how release will mitigate the risks to him. *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020)(failing to provide a release plan demonstrating mitigation of risks); *Sanders*, No. 19-20037-01-DDC, 2020 WL

1528621, at *5 ("Mr. Sanders's release request does not explain how his release would mitigate his overall exposure to COVID-19.  Indeed, Mr. Sanders relies on his speculative assumption that his risk of contracting COVID-19 is higher inside CoreCivic than if he is released. But that assumption is not necessarily accurate.").

### d. The Likelihood That The Defendant's Proposed Release Would Increase COVID-19 Risks To Others.

In considering temporary release under § 3142(i) based on COVID-19, "it is also appropriate to consider the likelihood that the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release." *Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *7. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Id.*

Shelton has a history of non-compliance while on supervision, was on pretrial diversion at the time of the instant offense, and has also been charged with another state court offense while on diversion.  [DE 33 at 173; DE 35 at 176].  Such history causes the Court concern as he has demonstrated an inability to be compliant while on bond, potentially putting law enforcement and supervision officers at risk during the pandemic.  Supervising a non-compliant defendant out in the community will place pretrial services officers at heightened risk of contracting the virus.

### e. Weighing the Clark Factors.

This Court is not blind to the risks associated with the COVID-19 virus whether in the Oldham County Detention Center or any other location in this district.  But Shelton has not established compelling reasons sufficient to persuade the court that temporary release is necessary.

Critically, Shelton has failed to address the prior findings in regard to dangerousness. *United States v. Blankenship*, No. 2:19-CR-237(2), 2020 WL 1557664, at *3 (S.D. Ohio Apr. 1, 2020). It remains that there are no conditions or combination of condition that will reasonably assure the safety of the community.

In addition, Shelton has not rebutted the proffer by the United States that the correctional and medical staff at Oldham County Detention Center are implementing precautionary and monitoring practices sufficient to protect detainees from exposure to the COVID-19 virus. *United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020). While the court is mindful of Shelton's concerns, the COVID-19 outbreak does not constitute a sufficiently compelling reason to justify release, even with a higher risk factor, where the safety of the community cannot be ensured and the facility has taken appropriate measures. *Id.*; *Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2; *United States v. Thomas*, No. CR 19-176, 2020 WL 1599339, at *1 (W.D. Pa. Mar. 31, 2020). Furthermore, he has not established any proposed release plan that would alleviate his overall COVID-19 risks.

The Court finds Judge Edwards' opinion well-reasoned. Given the record now before the Court and based upon the balance of factors described above, release is not appropriate under 18 U.S.C. §3142(i).

### B. Due Process Violation Analysis

Although not well developed, Shelton also generally asserts that the detention during the COVID-19 pandemic violates the Constitution. [DE 91 at 450; DE 99 at 475]. Under the Due Process Clause, pretrial detainees indeed have a right against prison conditions that amount to "punishment" since they have not been convicted. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). But

pretrial detention to secure a defendant's appearance or protecting the public is not punitive under the Due Process Clause. *See United States v. Salerno*, 481 U.S. 739, 748 (1987).

> And even if pretrial detention during a worldwide pandemic seems punitive in the lay sense, that restriction cannot violate due process unless there is also an express intent to punish with no rational relationship to legitimate government interests. But there is no evidence of such arbitrary purpose and punitive intent here. To the contrary, the Bureau of Prisons is by all objective accounts responding to the COVID-19 pandemic as any reasonable observer could expect under the circumstances to prevent infectious outbreak, protect inmate health, and preserve internal order—all legitimate government aims.

*Villegas*, No. 2:19-CR-568-AB, 2020 WL 1649520, at *2 (citing *Bell*, 441 U.S. at 538-39); *see also United States v. Cox*, 2020 WL 1491180, at *6 (D. Nev. Mar. 27, 2020) (finding no Fifth Amendment due process violation in detaining defendants pretrial under the Bail Reform Act despite COVID-19 health risks); *United States v. McDonald,* No. 219CR00312KJDVCF, 2020 WL 1659937, at *3 (D. Nev. Apr. 3, 2020). There is thus no violation of Shelton's due process.

### C.  Second [DE 100] and Third Motions for Hearing [DE 101].

While the Bail Reform Act is silent about whether the defendant is entitled to an hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) rather than a hearing. *Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *3. 18 U.S.C. § 3145(b) establishes that "[i]f a person is ordered detained by a magistrate judge" that person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The court must then make a *de novo* "determination as to whether the magistrate judge's findings are correct based on the court's review of the evidence before the magistrate judge." *Id.* (collecting cases and citing *United States v. Sidbury*, No. LWF-15-184, 2015 WL 8481874, at *1 (E.D.N.C. Dec. 8, 2015)); *United States v. Williams*, 753 F.2d 329, 333–34 (4th Cir. 1985)).

The court "may conduct an evidentiary hearing" as part of its review. *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). That said, "there is no statutory requirement that the court hold a hearing" and the court "retains the discretion to decide whether to hold a hearing." *Martin,* No. CR PWG-19-140-13, 2020 WL 1274857, at \*3; *United States v. Oaks*, 793 F. App'x 744, 747 (10th Cir. 2019). *See also, Williams*, 753 F.2d at 331 (recognizing that the court may permit the parties to "introduce proffers of evidence" to allow the introduction of new evidence); *United States v. Hensler*, 18 F.3d 936 (5th Cir. 1994) (holding defendant was not entitled to evidentiary hearing); *King*, 849 F.2d at 490 ("based solely on a careful review of the pleadings and the evidence developed at the magistrate's detention hearing, the district court may determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct.").

Shelton has had multiple opportunities to be heard on this matter, both on the original factors under 18 U.S.C. §3142(g) and on this request under the "compelling reason" prong of 18 U.S.C. §3142(i). He has had prior hearings as well as multiple opportunities to brief the issues. Yet Shelton has failed to address any of the concerns expressed by Judge Edwards or by this Court regarding the factors considered 18 U.S.C. §3142(g) and no hearing on this matter is necessary.

## CONCLUSION

As it remains that there are no conditions or combination of condition that will reasonably assure the safety of the community if Shelton is released and he has failed to demonstrate a "compelling reason" for temporary release under 18 U.S.C. §3142(i), release is inappropriate. For all the reasons above, **IT IS ORDERED** that Defendant's Motion to Reconsider Detention Order [DE 100] is **DENIED** and Defendant's Second [DE 100] and Third Motions for Hearing [DE 101] are **DENIED.**

Copies to:    Counsel of record
Probation Office